**31 C.C.P.A. (Patents)**

## In re CHEVENARD.

### Patent Appeal No. 4805.

Court of Customs and Patent Appeals.

Dec. 8, 1943.

E. F. Wenderoth, of Washington, D. C. (A. Ponack, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the final rejection by the Primary Examiner of all of the claims, 12 to 16, inclusive, of an application for a patent alleging improvements in "Manufacture of Compensating Spiral Springs for Watches, Chronometers and the like."

The application is closely related to the application of appellant in 139 F.2d 711, decided concurrently herewith.

Claim 12 is illustrative of the subject matter involved and reads as follows: "12. A process for the manufacture of compensating spiral springs for watches, chronometers and the like, which comprises the steps of taking an austenitic iron-nickel alloy containing 35-46% of Ni, 0.05-1% C, 0.5-2% Mn, 0.2-1% Si and additionally a small proportion of at least one of the elements taken from a group consisting of aluminium, titanium and boron for entering into solid solution in the austenite so as to modify the thermo-elastic anomaly and simultaneously forming with the nickel, possibly also with the iron, or both, a constituent more soluble hot than cold in the austenite, subjecting the same to a gradual wire drawing, with reheatings between the passes, down to a diameter from about 0.4 to about 1 mm., subjecting the wire to a hyperquenching, continuing the wire drawing without intermediary reheating, rolling the wire into a ribbon of a desired transverse section, winding up the ribbon into a spiral and finally fixing the

latter by heating to a temperature of 500 to 700° C."

The reference cited is an article by M. A. Hunter entitled "Alloys of Iron and Nickel with Low Expansion Coefficients", Metals Handbook, 1936 Ed., American Society for Metals, Cleveland, pp. 345 to 349.

The alleged invention here, as in said related application, concerns a process for making compensating watch springs. The disclosure of the involved application differs from that of the related application only in that the alloy defined in the instant appeal, although of the same general character, is of a specifically different composition. The manipulative treatment is the same in both appeals.

Claims 12 and 13 were rejected by the examiner as lacking invention over the reference and as failing to properly point out the alleged invention. The latter rejection was based upon the expression in the claims "modify its thermoelastic anomaly." The examiner held such expression to be manifestly indefinite. The examiner also held those claims to improperly include purported "Markush" groups of varying scope, in that claim 12 includes aluminum in addition to the elements in the group contained in claim 13.

Claims 14 to 16, inclusive, were rejected by the examiner on the ground of estoppel in view of appellant's election in response to an Office requirement.

The Board of Appeals modified the decision of the examiner in that it reversed the holding of the examiner that claims 12 and 13 were improper as to form and furthermore it grouped claim 14 with claims 12 and 13, holding that none of these claims are patentable over the prior art. In all other respects the decision of the examiner was affirmed.

We do not deem it necessary in view of our decision in the said related appeal to discuss in detail the similarity between the alloy disclosed in the reference and that set forth in those rejected claims. It suffices to state that, as held by the examiner, the composition of the modified Elinvar material disclosed in the reference does not differ from that called for by claim 12 except that it additionally includes 1-3% chromium and 1-3% tungsten and omits the small proportion of one or more of the group of aluminum, titanium and boron. The examiner pointed out that the text of the reference clearly shows that the original Invar described therein discloses that such alloys have been made without chromium and further that it was noteworthy that appellant in his related application included from 4-8% chromium in the alloy. The examiner further stated as follows: "Moreover, the tungsten in this modified Elinvar of Hunter is equivalent to the aluminum or titanium of claim 12, according to applicant himself in view of his inclusion together of aluminum, titanium and tungsten in a purported Markush group in claim 8 of his companion application Ser. No. 208,487."

Appellant apparently does not rely upon the composition of the alloy to impart patentability to the rejected claims, for the reason that he states in his brief that "the essence of the invention resides primarily in the procedural steps of manipulating the alloy rather than in the precise composition of the latter."

It was held below in this, as in the related appeal, that the manipulation set out in claims 12, 13 and 14 is conventional. The manipulation disclosed in those claims is the same as the manipulation disclosed in the related appeal and our decision in that case is decisive on the question here.

Appellant in his brief here, as in that appeal, endeavors to distinguish between quenching in water as shown in the reference and the "hyperquenching" as set out in the claims, and states that the examiner cited nothing to support his holding that the brief heating disclosed in the claims is the equivalent of a longer heating at a lower temperature. Since those contentions have been discussed in the companion case, attention is directed thereto.

In rejecting claims 15 and 16 the examiner stated as follows: "Claims 14 to 16 are rejected on the ground of estoppel in view of applicant's election in the penultimate sentence of remarks accompanying the amendment filed March 13, 1940 in response to the requirement in the penultimate paragraph of the Office action of September 13, 1939."

The record does not show either the Office action or appellant's election, referred to by the examiner.

The Board of Appeals seemingly interpreted the decision of the examiner with respect to claims 15 and 16 as follows: "Claim 15 and 16 are clearly for different and divisible subject matter from the first group and the requirement that these two claims be divided out must be sustained."

 Apparently the board thought that the election stated by the examiner resulted in the dividing out of claims 15 and 16. The Board of Appeals generally affirmed the decision of the examiner with respect to those claims. No question on the board's ruling in this respect has been discussed by the appellant. There is nothing in the record or appellant's brief upon which consideration of the board's holding may be made.

For the reasons herein set out, the decision of the Board of Appeals is affirmed.

Affirmed.